# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**JAMES WERE**
**N.K.A. NAMIR ABDUL MATEEN,**

        **Petitioner,**

        **v.**

**DAVID BOBBY, Warden,**

        **Respondent.**

**Case No. 1:10-cv-698**

**Judge Michael H. Watson**

**Magistrate Judge Deavers**

## OPINION AND ORDER

Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. § 2254. This matter is before the Court on Petitioner's motion to stay these proceedings and hold them in abeyance to permit him to return to state court for the second time. Petitioner contends that recent developments in Ohio case law have now rendered some of his habeas claims unexhausted, his petition is now "mixed," and he must return to state court to exhaust his state court remedies. ECF No. 182. Respondent opposes the motion. ECF No. 185. Petitioner has filed a Reply, ECF No. 186, and notices of additional authority. ECF Nos. 187, 189, 190. Respondent replied to Petitioner's notices of additional authority. ECF Nos. 188, 191. For the foregoing reasons, the Court **DENIES** Petitioner's motion.

## I.    PROCEDURAL HISTORY

On November 17, 1995, following a jury trial, Petitioner was sentenced to death in Hamilton County, Ohio, for the aggravated murder of Corrections Officer Robert Vallandingham, which occurred during the 1993 prison riot at the Southern Ohio Correctional Facility in Lucasville, Ohio.  On February 6, 2002, the Supreme Court of Ohio reversed Petitioner's convictions, finding that the trial court violated Petitioner's statutory and constitutional right to a competency hearing. *State v. Were*, 94 Ohio St. 3d. 173, 761 N.E.2d 591 (2002).  A new trial began on June 6, 2003, and Petitioner was again sentenced to death for the aggravated murder of Officer Vallandingham.

On September 30, 2005, while his direct appeal was pending, Petitioner filed a postconviction action.  The trial court granted the State's motion to dismiss.  On September 2, 2009, the Court of Appeals for the First Appellate District affirmed the decision of the trial court, and the Supreme Court of Ohio declined to exercise jurisdiction over the matter. *State v. Were*, No. C-080697, 2009 WL 2768021 (Ohio App. 1st Dist., Sept. 2, 2009).

On October 8, 2010, Petitioner initiated the instant habeas proceedings.  ECF Nos. 1, 2.  Petitioner filed his Petition on January 21, 2011, an Amended Petition on February 23, 2011, a Second Amended Petition on April 15, 2013, and a Third Amended Petition on November 18, 2014.  ECF Nos. 23, 28, 67, 87, 92.

Meanwhile, on February 13, 2008—prior to the filing of the instant habeas case—Petitioner obtained leave to intervene in a related Lucasville Riot death penalty habeas corpus case—*Robb v. Ishee*, Case No. 2:02-cv-535 (S.D. Ohio)—for the limited purpose of conducting discovery. *Robb*, Order, ECF No. 104.

On December 1, 2014, Petitioner filed his first motion to stay and hold these proceedings in abeyance. ECF No. 90. Petitioner argued that he should be allowed to return to state court to exhaust his second, third, tenth, and twenty-first grounds for relief because additional supporting facts for these claims were identified during the discovery process in this matter and in *Robb v. Ishee*, Case No. 2:02-cv-535 (S.D. Ohio). On September 23, 2015, the Court granted Petitioner's motion over Respondent's objection, finding that the factors set forth in *Rhines v. Weber*, 554 U.S. 269 (2005), for a stay and abeyance were met. ECF No. 108.

Petitioner returned to state court in a successive postconviction petition filed in the Hamilton County Court of Common Pleas. ECF No. 175-1 at PAGEID ## 23894–24057; ECF No. 175-7 at PAGEID ## 27616–809. Petitioner asserted allegations identical to those in his federal Third Amended Petition, including prosecutorial misconduct (the second, third, and tenth grounds for relief in the federal petition) and ineffective assistance of counsel (the twenty-first ground for relief in the federal petition). ECF No. 92 at PAGEID ## 2726–30; 2731–77; 2812–26; 2888–2906. The Hamilton County Court of Common Pleas granted the

State's motion for summary judgment on December 29, 2016, dismissing Petitioner's successive petition for failing to meet the jurisdictional requirements of Ohio Revised Code § 2953.23.  ECF No. 175-9 at PAGEID ## 29249–50.  On June 27, 2018, the Court of Appeals for the First Appellate District of Ohio affirmed the dismissal.  ECF 175-10 at PAGEID ## 29610–18.  The appellate court found that the dismissal was appropriate because Petitioner's claims could not satisfy Ohio Revised Code § 2953.23 (A)(1)(b), which requires an outcome-determinative constitutional violation.  *Id.* at PAGEID # 29614.  The appellate court elaborated that the Supreme Court of Ohio, when rejecting Petitioner's sufficiency of the evidence claim on direct appeal, characterized the evidence of guilt at trial as "extensive."  *Id.* at PAGEID # 29615.  The Supreme Court of Ohio declined to accept jurisdiction over Petitioner's appeal on December 12, 2018.  ECF No. 175-10 at PAGEID # 30121.  The United States Supreme Court subsequently denied certiorari.  ECF No. 151.

Petitioner resumed his federal habeas proceedings in January of 2019 by seeking reinstatement of the case to the active docket.  ECF No. 143.  The motion was granted, ECF No. 144, and a new Scheduling Order was entered on November 12, 2020.  ECF No. 163.  One of the items in the new Scheduling Order was a deadline for Petitioner to file an amended petition.  On May 26, 2022, Petitioner moved for an extension of time to file his amended petition, ECF No. 180, and the instant motion for a stay and abeyance.  ECF No. 182.

Petitioner's motions were prompted by the Supreme Court of Ohio's March 22, 2022 opinion in a capital postconviction case, *State v. Bethel*, 167 Ohio St. 3d 362 (2022). Petitioner contends that the *Bethel* opinion renders the prosecutorial misconduct claims in his Third Amended Complaint unexhausted because of its expansive interpretation of Ohio Revised Code § 2953.53(A)(1) and Criminal Rule 33. He further seeks authorization for his counsel to appear in state court on his behalf. ECF No. 182. Respondent opposes a stay, arguing it would be futile because Petitioner cannot meet the jurisdictional requirements for a successive petition under the *Bethel* standard. ECF No. 185 at PAGEID ## 30276–78.

## II.     ANALYSIS

### A. State v. Bethel

In *State v. Bethel*, the Supreme Court of Ohio examined the application of Ohio's jurisdictional statute for successive postconviction petitions, Ohio Revised Code § 2953.23 (A)(1), and the statute governing motions for a new trial, Criminal Rule 33, with respect to claims brought pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). In 2005, Robert Bethel was convicted in Franklin County of two counts of capital murder for the deaths of James Reynolds and Shannon Hawks. *Bethel*, 167 Ohio St. 3d. at 363. Bethel's direct appeal and first postconviction petition were denied. *Id.* at 363–64. In 2018, Bethel filed a successive postconviction petition and a motion for leave to file a motion for a new trial, relying on law enforcement reports allegedly suppressed by the

prosecution, which indicated that a third person admitted to the murders. *Id.* at 365–66. The trial court denied Bethel's motion for a new trial as untimely under Criminal Rule 33 and his successive postconviction petition for failing to comply with the requirements of Ohio Revised Code § 2953.23(A)(1). The court of appeals affirmed. *Id.* at 366.

The Supreme Court of Ohio found that the lower courts had incorrectly interpreted Ohio Revised Code § 2953.23(A)(1) and Criminal Rule 33. Ohio Revised Code § 2953.23(A)(1) conditions trial court jurisdiction over untimely or successive postconviction petitions on a petitioner's showing: (a) that he was "unavoidably prevented from discovery of the facts" underlying his claim, and (b) that no reasonable factfinder would have found him guilty or eligible for a death sentence but for the constitutional error at trial. The Supreme Court of Ohio found in *Bethel* that, to meet the "unavoidably prevented" jurisdictional requirement of Ohio Revised Code § 2953.23(A)(1)(a), the petitioner need only show that the claim was based on information suppressed by the prosecution. *Id.* at 367–68. The Supreme Court of Ohio concluded that the trial court erred when it imposed a diligence standard on Bethel that was inconsistent with *Brady*.

The Supreme Court of Ohio also found that the second jurisdictional requirement, Ohio Revised Code § 2953.23(A)(1)(b), "goes to the heart of *Brady's* third prong, which requires [the petitioner] to show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 369–70 (internal

quotations marks and citation omitted).  Bethel was not required to show that the evidence would have resulted in acquittal; only that it would have undermined the confidence in the outcome of his trial.  *Id.* at 370.  The Supreme Court of Ohio determined that Bethel could not meet this standard because the evidence he relied upon was inadmissible double hearsay that would not have undermined the verdict, especially considering the questionable nature of the statement involved and Bethel's detailed confession.  *Id.* at 372.

Next, the Supreme Court of Ohio found that the lower courts erred in imposing a requirement on Criminal Rule 33 that is not included in the statute. The trial court denied Bethel's motion for leave to file a motion for a new trial because of "unreasonable delay" between the time of discovery of the supporting evidence and the time he filed the motion.  The Supreme Court of Ohio ruled that the lower courts improperly created a non-existent deadline for motions for a new trial.  *Id.* at 376–77.  Even though the trial court improperly denied Bethel's motion for leave to file a new trial, the Supreme Court of Ohio found the error was harmless because Bethel's *Brady* claim would not have ultimately succeeded.  *Id.* at 377.

The Supreme Court of Ohio found that Ohio Revised Code § 2953.23 set the jurisdictional bar so high that certain meritorious *Brady* claims would never be heard through Ohio's postconviction process.  To remedy this problem, *Bethel* concluded that Ohio Revised Code § 2953.23(A)(1) should be interpreted coextensively with *Brady*.

## B. Bethel's Applicability to Petitioner's Claims

Nearly four years before the Supreme Court of Ohio decided *Bethel,* the First District Court of Appeals held that jurisdiction was lacking over Petitioner's successive postconviction claims based on his inability to satisfy the "outcome-determinative" prong of Ohio Revised Code § 2953.23(A)(1)(b):

> The Supreme Court also rejected challenges on direct appeal to the sufficiency of the evidence to support Were's convictions and to defense counsel's effectiveness in cross-examining state's witnesses and in presenting Were's case during both the guilt and penalty phases of the trial. The court characterized as "extensive" the evidence adduced at trial showing that Were had kidnapped the corrections officer, and as "ample" the evidence of his guilt of aggravated murder. That evidence consisted of testimony by fellow inmates who had witnessed the offenses, testimony by others to whom Were had later made incriminating statements, and recordings of inmate conversations picked up by listening devices placed by law enforcement in tunnels under the prison. And while the defense sought to impeach the credibility of the inmates with cross-examination concerning favorable treatment offered and/or received by the inmates in exchange for their testimony, the "tunnel tapes" revealed self-incriminating statements by Were and substantially corroborated the testimony of the witnesses to his offenses.
>
> Thus, Were's intellectual-disability, prosecutorial-misconduct, and ineffective-counsel claims, when considered with the files and records of the case cannot be said to demonstrate by clear and convincing evidence that, but for the constitutional errors alleged in those claims, no reasonable factfinder would have found him guilty of aggravated murder or kidnapping or eligible for the death sentence. Because with respect to those claims, Were did not satisfy the RC. 2953.23(A)(1)(b) jurisdictional requirement, the common pleas court had no jurisdiction to entertain them.

ECF 175-10 at PAGEID ## 29615–16. As the later *Bethel* decision recognized, the appropriate analysis under the third prong of *Brady* is not sufficiency of the

evidence, but rather whether the suppressed evidence undermines the confidence in the outcome of the trial. *Bethel*, 167 Ohio St. 3d at 370.

Petitioner argues that *Bethel* has now "significantly expanded the procedural remedy" available to him. ECF No. 182 at PAGEID # 30243. Specifically, Petitioner contends that *Bethel* eliminated the "reasonable time" requirement for him to file a motion for a new trial. He also contends that, according to *Bethel*, the Ohio state courts incorrectly applied Ohio Revised Code § 2953.23(A)(1) to decline jurisdiction over his successive postconviction claims. *Id.* at PAGEID ## 30243–44. Petitioner admits that he failed to file a motion for a new trial but claims that *Bethel's* interpretation of Criminal Rule 33 has now provided him with the ability. ECF No. 186 at PAGEID ## 30281–82. For these reasons, Petitioner argues he should be allowed to return to state court to exhaust his *Brady* and other prosecutorial misconduct claims (Grounds Two, Three, and Ten in the Third Amended Complaint, ECF No. 92).

## C. Stay Order is Inappropriate

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which governs federal habeas corpus petitions, requires that state prisoners exhaust all federal claims before those claims may be reviewed by district courts on habeas review. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is satisfied once the petitioner has fairly presented all his claims to the highest court in the state in which he was convicted, thus giving the state a full and fair opportunity to rule on those claims before the petitioner seeks relief in federal

court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999). This can be done by invoking one full round of the state's established procedures. *Id.* at 845.

Under Ohio law, a claim must be presented on direct appeal if all the facts necessary to develop the claim were evident from the trial record. Otherwise, the claim will be barred by res judicata. *See Durr v. Mitchell,* 487 F.3d 423, 432 (6th Cir. 2007). Claims based on evidence wholly *within* the trial record must be brought on direct appeal, while claims based on evidence *outside* the trial record cannot be brought on direct review and must be raised in a petition for state post-conviction relief. *Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016).

Federal district courts may not adjudicate a mixed habeas petition that contains both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) (finding that comity requires that state courts have the first opportunity to review unexhausted claims). District courts have the discretion, however, to stay habeas proceedings and hold them in abeyance to allow a petitioner with a mixed petition to return to state court to exhaust his unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 275–76 (2005). A stay is appropriate only when the unexhausted claims are not plainly meritless, and the petitioner has shown good cause for his failure to exhaust the claims earlier. *Id.* at 277. Stay-and-abeyance is available only in limited circumstances at the discretion of the district court and must be conditioned on time limits so as not to undermine the AEDPA's objectives of streamlining habeas proceedings and encouraging

finality. *Id.* at 276–78. Thus, a stay is inappropriate "if a petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 278.

Here, the Court stayed these proceedings to permit Petitioner to return to state court to litigate a successive postconviction petition asserting claims developed during the discovery authorized as part of these habeas corpus proceedings. The Ohio Court of Appeals did not reach the merits of those claims. Instead, that court determined that Petitioner's claims did not meet the gatekeeping requirements of Ohio Revised Code § 2953.23(A)(1).

The allegations forming the basis of Petitioner's second, third, and tenth claims for relief in his Third Amended Petition, ECF 92, are nearly identical to the allegations raised in his successive state postconviction petition. It is evident from a comparison of the claims that Petitioner presented both the factual and legal basis of his second, third, and tenth claims for relief to the state courts through postconviction procedure while these federal proceedings were stayed.

Petitioner has never filed a motion for a new trial under Criminal Rule 33. However, a motion for a new trial is outside of Ohio's ordinary appellate procedures and thus is not a required procedure to exhaust a constitutional claim before it can be raised in a federal habeas corpus petition. *See Carter v. Mitchell*, 693 F.3d 555, 564 (6th Cir. 2012) (once a federal claim has been fairly presented at the first possible opportunity within one complete round of the State's established appellate review process, the claim has been exhausted).

Petitioner is not required to repetitively assert his federal claims in a motion for a new trial to satisfy the exhaustion requirement:

> Although [the language of § 2254] could be read to effectively foreclose habeas review by requiring a state prisoner to invoke *any possible* avenue of state court review, we have never interpreted the exhaustion requirement in such a restrictive fashion. *See Wilwording v. Swenson,* 404 U.S. 249, 249–250 (1971) *(per curiam).* Thus, we have not interpreted the exhaustion doctrine to require prisoners to file repetitive petitions. *See Brown v. Allen,* 344 U.S. 443, 447 (1953) (holding that a prisoner does not have "to ask the state for collateral relief, based on the same evidence and issues already decided by direct review"). We have also held that state prisoners do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past. *See Wilwording v. Swenson, supra,* at 249–250 (rejecting suggestion that state prisoner should have invoked "any of a number of possible alternatives to state habeas including 'a suit for injunction, a writ of prohibition, or mandamus or a declaratory judgment in the state courts,' or perhaps other relief under the State Administrative Procedure Act").

*O'Sullivan*, 526 U.S. 838, 844 (1999).

Exhaustion is a matter of comity and not jurisdiction. *O'Guinn v. Dutton*, 88 F.3d 1409, 1412 (6th Cir. 1996). The Supreme Court explained the principles of comity underpinning the exhaustion doctrine:

> Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Coleman v. Thompson*, 501 U.S. 722, 731 (1991) (internal citations omitted).

As noted above, the State of Ohio was given the opportunity to examine Petitioner's successive postconviction claims and passed on the merits by invoking a state procedural bar.  Resubmission of a claim to state courts is unnecessary when the state courts had a full opportunity to determine the federal constitutional issues before resort was made to a federal forum, and the policies served by the exhaustion requirement are not furthered by requiring resubmission of the claims to the state courts.  *See Francisco v. Gathright,* 419 U.S. 59, 63 (1974).  Comity does not compel the Court to stay this matter.  The Ohio state courts were provided with a fair opportunity to address the merits of Petitioner's federal claims, and considerable federal judicial resources have been invested during Petitioner's twelve-year long federal habeas case.  The Court finds that the *Bethel* decision does not render Petitioner's claims unexhausted, Petitioner's Third Amended Petition does not constitute a mixed petition, and a stay of the proceedings is inappropriate.

### D. Procedural Default

As an additional matter, the issue of exhaustion is separate from the issue of procedural default.  In the Sixth Circuit, a district court must undertake a four-part analysis when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule.  *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Id*.  Second, the court must determine whether the

state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the court has determined that a petitioner did not comply with a state procedural rule, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*

*Bethel* arguably implicates the third prong of the *Maupin* test. The United States Supreme Court recently reiterated that "[t]his Court will not take up a question of federal law in a case 'if the decision of the state court rests on a state law ground that is *independent* of the federal question and *adequate* to support the judgement.'" *Cruz v. Arizona*, 598 U.S. ___ (2023), 2023 WL 2144416 at *5 (Feb. 22, 2023) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002) (emphasis in original)). After *Bethel*, this Court questions whether the § 2953.23(A)(1) gatekeeping provisions governing untimely or successive postconviction petitions are independent of federal law when applied to *Brady* claims. As discussed above, the Supreme Court of Ohio recognized that lower courts have construed the successive postconviction statute and Criminal Rule 33 inconsistently or incorrectly as applied to *Brady* claims. The Supreme Court of Ohio determined that the question of whether Bethel could satisfy the "no reasonable fact-finder" prong of § 2953.23(A)(1)(b) "goes to the heart of *Brady*'s third prong . . . ." *Id.*

(quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).  By interpreting Ohio

Revised Code § 2953.23 coextensively with *Brady*, the state procedural rule

appears to rely on and be inextricably interwoven with federal law.  *See Ake v.*

*Oklahoma*, 470 U.S. 68, 75 (1985) (when resolution of the state procedural law

question depends on a federal constitutional ruling, the state law prong of the

court's holding is not independent of federal law and jurisdiction is not

precluded).

The Court notes, however, that even if the state rule of procedure is an

adequate and independent basis to enforce procedural default, this Court must

necessarily still review the merits of Petitioner's *Brady* claim without the

limitations imposed by 28 U.S.C. § 2254(d), to determine whether cause and

prejudice exists to excuse any default.  *See Strickler v. Greene*, 527 U.S. 263

(1999).  *See also Hughbanks v. Hudson*, 2 F.4th 527, 535–36 (reiterating that *de*

*novo* review of a procedurally defaulted *Brady* claim is necessary in order to

determine whether cause and prejudice exist to excuse the default and noting

"if Hughbanks can demonstrate a meritorious *Brady* violation, he will have also

made the requisite showing of cause and prejudice, allowing us to grant habeas

relief.")

A separate briefing order will be issued on whether Petitioner's claims

remain procedurally defaulted pursuant to the independent and adequate state

ground doctrine in light of the *Bethel* decision.

### III.    CONCLUSION

For the foregoing reasons, the Petitioner's Motion to Stay, ECF No. 182, is

**DENIED**.  The Court also **DENIES** the motion requesting authorization for his

federal habeas counsel to represent him in state court in connection with the

filing of another successive postconviction petition or a motion for leave to file a

motion for a new trial.  The Clerk shall terminate ECF No. 182 as a pending

motion.

**IT IS FURTHER ORDERED** that the parties are to file a joint proposed

scheduling order within fourteen (14) days of the date of entry of this Order.

**IT IS SO ORDERED**.

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT JUDGE**